```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF IOWA
 2                     WESTERN DIVISION

 3   United States of America,

 4          Plaintiff,            No. 07-CR-4004-DEO

 5       vs.

 6   Thomas Weiner,

 7          Defendant.

 8                     *   *   *   *   *

 9          Transcript of proceedings held at the Federal

10   Courthouse, Sioux City, Iowa, on the 20th day of June,

11   2008, commencing at 3:00 p.m.

12                     *   *   *   *   *

13   Before:  Senior Judge Donald E. O'Brien

14                     *   *   *   *   *

15   Appearances:

16   Jack Lammers
     Assistant US Attorney
17   600 4th Street, Suite 290
     Sioux City, Iowa 51101              for USA.
18
     Jay E. Denne
19   Attorney at Law
     600 4th Street, Suite 303
20   P.O. Box 912
     Sioux City, Iowa 51102-0912         for Defendant.
21

22                     *   *   *   *   *

23


24
     Transcript ordered the 4th day of December, 2008.
25   Transcript delivered the 15th day of December, 2008.
```

1                    P R O C E E D I N G S

2          THE COURT:  Let the record show we're here in

3    the matter of United States vs. Thomas Weiner.  I guess

4    it's Weiner, docket number CR4004.  This is a case where

5    the Defendant was sentenced -- excuse me, pled guilty in

6    July of 2007, and --

7          MS. ALI TINKHAM:  Do you want me to find that?

8          THE COURT:  Just a moment.

9          MS. ALI TINKHAM:  It's not here.  I'll get it.

10          THE COURT:  Just a minute.  I have the

11    criminal docket for this case, and it shows that plea

12    entered on July the 3rd of 2007, which is getting pretty

13    close to a year, and I don't have independent

14    recollection of everything I'm going to say about this,

15    but I have talked to my crew, and they have a good

16    remembrance of it.

17          On August the 1st of 2007, some 60 days after

18    the plea was set, sentencing for 10/25/2007, and then on

19    October 24th, 2007, there was an order canceling the

20    sentencing hearing.  It said, by notification from

21    counsel for the parties, this matter will be rescheduled

22    for hearing.  On December 28th, 2007, there was a status

23    report filed by the Defendant's counsel.  On -- on

24    February 2nd of 2008, it was set for hearing for

25    April 25th, 2008, and on April 17th, 2008, it was set --

1   reset hearing for May 29th of 2008. On May 27th, 2008,

2   it was set for hearing for June 20th, 2008, which is

3   today, I guess.

4         Now, in each of these times, I have talked

5   with Ms. Gollhofer, and I said I had written on this,

6   when I set the pre-sentence report, where's he been.

7   She said the lawyers have told her that they were

8   working on this, and they wanted to keep giving him the

9   opportunity to talk with the Government and grand jury

10   and anyone else that apparently was important.

11         My reason for bringing you back here and not

12   having him back here is that it's my understanding that,

13   at this time, the Government has said, in fact, if it's

14   set, it's set, and we're ready and so forth. And my

15   question is, and I think you already know what my

16   question is; does it have to be today, or is it pretty

17   well -- I'll say, does it have to be, or are we doing it

18   today only because we assigned it, or are you done

19   talking or what?

20         MR. LAMMERS: It doesn't have to be today. I

21   see no reason not to do it today. I have certainly not

22   objected to -- if anybody wanted a continuance, I have

23   not objected, and I have not said, no, we got to do this

24   today. That's never been my position.

25         Just to give the Court procedural history,

1   basically what happened is, we got -- I guess he pled

2   guilty in 2007.  I think we talked to him prior to his

3   plea of guilty on a proffer.  He talked about a number

4   of people, and I think he wrote a letter to you where it

5   says he talked about a number of people.  That was after

6   almost all of those people were done.

7           So we looked back through it.  I believe --

8   actually, I think we came to court on one occasion,

9   going to have a sentencing hearing, and might have had a

10  meeting similar to this and said, we'll try and use him.

11  See if we can't find a way to use him.

12          We went back through, looked through the

13  proffer, checked with the task force, saw what was open,

14  then I think that sort of led us up to the spring, I

15  guess -- if I'm skipping a step, Jay, let me know.

16          At that point, I was about to talk to

17  Sal Sanchez.  He was the task force officer.  He was

18  gone for a while.  That was one of the reasons why we

19  continued this.  He came back, and I talked to him again

20  and said, who is out there; who can we potentially do?

21  And then we pursued the one lead that we had left.

22          At that point, then I put him in the grand

23  jury, and then that was, I think -- the end of April, I

24  think, was when he testified; the end of April or May.

25  I can't recall off the top of my head, but within the

1    past couple of months, and that's where we are.

2            I'm not pressing, saying let's go forward

3    today.  I don't know that it does the Defendant any good

4    to delay it.  I don't -- it's not like he's been out of

5    custody doing active work and he could continue to do

6    active work; he's been in custody the whole time.  As

7    far as I'm concerned, if we're able to use him again, I

8    guess, really, where he's got a potential -- and I don't

9    even know what the potential is -- would be on a

10   Rule 35.  I don't know what continuing it does.

11           If the Court feels it would be in his interest

12   to continue the sentencing hearing and you want to do

13   that, I certainly don't object and haven't been pushing

14   to get this guy done.  Whatever the Court wants to do,

15   I'm fine.

16           THE COURT:  I'm not asking that it be changed.

17   I'm only saying, is the situation exhausted?

18           MR. DENNE:  First of all, I agree with

19   everything that Mr. Lammers has said in terms of the

20   procedural history of this case.  Obviously, not talking

21   to my client about what he thinks, my initial reaction

22   is that my understanding of the status of his

23   cooperation is he's grand juried against an individual.

24           I don't know where he is in the pipeline in

25   terms of being prosecuted.  My thought is that, if

1  there's a possibility he could be -- this gentleman

2  could be indicted soon and Mr. Weiner might be used as a

3  witness, which may lead to, potentially, a larger

4  recommendation from the Government, then I certainly

5  would have no objection to continuing the sentence.

6          I don't know if -- and I'm not going to put

7  Mr. Lammers on the spot and make him commit to anything,

8  obviously.  That would be a reason why I am not pressing

9  for it, unless I talk to my client and he says, I'm

10  tired of being in county jail and want out of here and

11  to go to federal prison.  He has not expressed that to

12  me.

13          THE COURT:  The reason I brought it up --

14  maybe several reasons.  Shane told me that he had heard

15  from somebody that there was going to be a 5-percent

16  substantial assistance motion, and that wasn't a great

17  big help.  I thought, well, if it's 5 percent today,

18  maybe it'll be something else later.

19          If I'm understanding you, Mr. Lammers, you're

20  saying that chances aren't too good it's going to get

21  any higher.

22          MR. LAMMERS:  I don't know.  Here's -- I can

23  make this in open court, on the record, or here.  I want

24  to answer the Court's question.  I have got one guy that

25  this defendant can help me with.  At this point, I have

1  this defendant, and I have one other person who is

2  telling me about that guy.

3          So frankly, and I don't want to overstate my

4  case, the fact that he's getting a motion at all at this

5  point is sort of generous.  We haven't gotten anybody

6  indicted based on information he's given us, and I know

7  the Court doesn't like the 5-percent recommendation.  I

8  understand you wouldn't think a 5-percent recommendation

9  is generous.  I'm saying, the fact that he's even

10 qualified for substantial assistance, I don't know how

11 to phrase it other than generous.

12         I'm not able to make a case on this guy at

13 this point.  If I make a case and I'm able to indict him

14 and able to use Mr. Weiner to give me drug quantity and

15 other types of things, there's a potential it would be a

16 higher recommendation.  I don't know the answer to that.

17         At this point, what he's done, what I have

18 been able to use him for is, he's testified to help me

19 kind of start an investigation -- start a grand jury

20 investigation against one target who I'm not really able

21 to indict at this point; I may be able to down the road.

22 As of yet, I've got him and one other -- maybe some

23 other older information against this other guy.

24         THE COURT:  Can you give us a very rough idea

25 of what the time frame might be?

1          MR. LAMMERS:  Of when I might be able to make

2   a case?

3          THE COURT:  Yes.

4          MR. LAMMERS:  I don't know.  It's --

5          THE COURT:  Well, give me your best judgment.

6   The reason I'm asking is this; I'm going to let

7   Mr. Denne go out and talk to his client.  Then he's

8   going to come back and say what they're thinking.

9          When he's talking to him, as was mentioned, I

10  have been in county jail for two years now or something,

11  and I don't really want to stay there any longer.

12         That's the only reason I ask you for some kind

13  of -- at least a rough estimation.

14         MR. LAMMERS:  Right.  I guess, here's where

15  I'm at.  If I can get some more people, I might be able

16  to make a case.  Really, what I need -- and most of

17  Mr. Weiner's information is from a couple years ago.

18  Really, I need to freshen it up against this guy.  I

19  don't know when that walks in the door.

20         If the task force comes up tomorrow and says,

21  I have a CI who can buy from this guy that Weiner told

22  you about, then I might be able to make the case next

23  month.  If I'm doing a dry historical case, it may take

24  me a few months, and I may never get there.

25         I'm sorry, I don't mean to be evasive, Judge.

1    I'd like to give you an I'll-have-it-done-within-

2    three-months answer.  It's going to depend on what's

3    coming in the door and how much information I'm able to

4    use.

5            THE COURT:  For the record, I'm not really

6    asking you to do that, and I wouldn't push you into

7    that.  Let's -- Mr. Denne, do you want to go ahead here?

8    Do you want to go talk to your guy first?

9            MR. DENNE:  Let me talk to him for a few

10   minutes.

11           THE COURT:  Take whatever time you need, and

12   we'll be ready when you get ready.

13           MR. LAMMERS:  I'm sorry I can't give you a

14   more definite answer, Judge.  I'd like to know, myself,

15   if I would be able to indict this guy in the next couple

16   months.

17           (A brief recess was taken.)

18           THE COURT:  What are you thinking, Mr. Denne?

19           MR. DENNE:  I spoke with my client, and I

20   explained to him what the Court said, that you weren't

21   pushing for the sentencing to go today and that

22   Mr. Lammers wasn't pushing for the sentencing to go

23   today, and so I explained to him that he had two

24   options; number one, we could go through with the

25   sentencing today with the Government's 5 percent

1  recommendation and then decide what the sentence should

2  be on the 3553(e) motion, or we could give it a little

3  more time and see what happens in terms of the

4  Government's information on this other individual and

5  see if we could do some potentially -- if the guy would

6  have to be indicted and maybe testify at trial or those

7  types of things, and he was willing to -- the other

8  option -- the other thing I told him is, I said, if

9  you're sick and tired of being in county jail and want

10  to go off to prison, I understand that too, and he said

11  he's willing to wait a little longer.

12        THE COURT:  I think we'll do that.  This is no

13  different than any other case and isn't any different

14  than the three times you asked me to continue it before.

15  I thought, I'm going to at least find out so that, in

16  the long run, we don't get a letter from this guy a year

17  from now saying, Judge, if you wouldn't have sentenced

18  me, I would have been able to get some more time off or

19  something.  He's got a tough deal anyway, and I wasn't

20  about to make it tougher.  That's why we'll do it and

21  we'll continue the matter.

22        MR. LAMMERS:  I have no objection.  I just

23  want everybody to be clear, if I could and make a

24  record, there's every possibility, when we continue

25  this, to, let's say next fall, and I have still not been

1  able to make a case --

2          THE COURT:  We won't hang, draw and quarter.

3          MR. LAMMERS:  I want to make sure, when I say

4  it's still 5 percent, the Court's not concerned that I

5  haven't been out not trying to actively pursue

6  something.

7          THE COURT:  I'm aware of that.  Did his folks

8  get to talk to him?

9          MR. DENNE:  While the jury verdict in your

10  civil case was being read, he had a family visit.  We

11  don't need a family visit.

12          THE COURT:  Thanks to you folks, and we'll

13  figure it out another day.

14          (Proceedings ended at 3:17 p.m.)

15                    *    *    *    *    *

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE
 2        I, the undersigned, a Certified Shorthand Reporter
 3    of the State of Iowa, do hereby certify that I acted as
 4    the Certified Shorthand Reporter in the foregoing matter
 5    at the time and place indicated herein; that I took in
 6    shorthand the proceedings had at said time and place;
 7    that said shorthand notes were reduced to print under my
 8    supervision and direction by means of computer-aided
 9    transcription; and that the foregoing pages are a full
10    and correct transcript of the shorthand notes so taken.
11
12        IN WITNESS WHEREOF, I have hereunto set my hand
13    this _____ day of _____, _____.
14
15
16
17                    _____
18                    Karrie D. Truitt
19                    Certified Shorthand Reporter
20
21
22
23
24
25
```